## COFFELT ET AL. *v.* WISE ET AL.

PROMISSORY NOTE.—*Principal and Surety.—Duress.—Fraud.— Pleading.—* To a complaint founded upon promissory notes executed by A. as principal and B. as surety. a joint answer was filed admitting the execution and delivery of the notes, but alleging, that, on the day they were executed. one C. represented to the defendant, A., that he was a United States officer, and had in his possession a warrant for said A.'s arrest, which he threatened to execute unless he, said A., would give his notes, with the defendant, B., as surety, for a certain sum, payable to the plaintiff; that said C. exhibited a folded paper marked " United States Warrant," and told A. it was a warrant for his arrest on a criminal charge, and that he would immediately arrest him and have him sent to the penitentiary, unless he would execute said notes ; that said A., being thereby greatly alarmed

and frightened, sought the defendant B. in company with said C., when said representations and threats were reiterated ; that said A. signed said notes under coercion and by reason of said threats and representations, believing them to be true ; that said B. signed said notes in order to save A. from arrest, and would not have signed them had he not been induced so to do by said representations, believing them to be true ; and that said C. was not an officer of any kind, and had no warrant or authority to arres said A.

*Held,* that the answer is sufficient.

From the Warren Circuit Court.

*M. Milford,* for appellants.

*J. McCabe,* for appellees.

WORDEN, J.—This case has been once before decided by this court, when the following opinion, prepared by BIDDLE, J., was pronounced:

" BIDDLE, J.—Complaint by appellees, against appellants,. founded on three several promissory notes for two hundred. and forty-six dollars and thirty-one cents each.

The appellants answered as follows :

" ' The defendants herein admit the execution and delivery of the notes declared on, but they aver that the said notes are fraudulent and void by reason of the following facts, VIZ. :   That, on the day said notes were executed, one Wiler came to the defendant Coffelt, and represented to said Coffelt, that he, Wiler, was a United States officer,. and that he, Wiler, was armed with, and had in his possession, a warrant issued by the United States court for the arrest of the defendant Coffelt, for which he had full authority, which he then and there proposed to do, unless the said Coffelt would give his notes, with the defendant Robert Anderson as surety, for the sum of six hundred and thirty-eight dollars and ninety-three cents, in three notes of equal amounts, due thirty, sixty and ninety days respectively, payable to " S. Wise and Brother," the plaintiffs. herein ; that said Wiler exhibited a certain folded paper, at the time and place aforesaid, marked in written letters.

Coffelt *et al. v.* Wise *et al.*

at the top thereof, " United States Warrant," and told said Coffelt the same was a warrant for his arrest on a criminal charge of having obtained goods under false pretences, and that he, Wiler, would immediately arrest said Coffelt thereon, and have him sent to the penitentiary, unless Coffelt would give his notes as aforesaid; that said Coffelt was thereby greatly and seriously alarmed, and terribly frightened, and, while under such fear, sought the defendant Anderson, in company with said Wiler, and thereupon said Wiler a second time, in the presence of said Anderson reiterated his threats as aforesaid, and again represented himself as a United States officer, armed with a warrant and authority for the arrest of the defendant Coffelt, which he would do unless said notes were given as aforesaid, with the defendant Anderson as security thereon, in which event he would not arrest said Coffelt. And this defendant Coffelt says, that he signed said notes in said suit under coercion, and by reason of the threats and representations of the said Wiler as aforesaid, which he believed to be true. And the said Anderson says he signed the notes in suit in order to save the defendant Coffelt from arrest, being a personal friend to the said Coffelt, and not wishing to see him arrested; and that he would not have signed said notes herein at all had he not been induced by the representations of the said Wiler aforesaid so to do, and under the belief that said Wiler's representations were true; that said Wiler was not a United States officer, or any kind of an officer, and had no warrant or authority to arrest defendant Coffelt, and that all his representations to that effect were false. Wherefore', etc.

" The answer was demurred to for the alleged want of facts; the demurrer was overruled, and exceptions taken.

"A reply was then filed:

" 1. A general denial;

" 2. A special paragraph.

" To the latter a demurrer was filed and sustained, ex-- ceptions were taken, but no question is raised in the rec-- ord upon the reply.

" Trial by jury and general verdict for the defendants.

" After verdict the appellees moved ' the court for judg- ment in their favor for the amount of the notes and inter- est described in the complaint, upon the state of the plead- ings, notwithstanding the verdict, for the reason that the answer does not state facts sufficient to constitute a de- fence to the complaint.'

" The motion was sustained, and judgment rendered in favor of the appellees for seven hundred and eighty-three dollars and fifty-five cents, and costs.   Exceptions and ap-- peal.

" This ruling raises the only question in the record, and it must turn upon the sufficiency or insufficiency of the answer to the complaint ; for it is admitted by both parties, that, if the answer is sufficient, the ruling is wrong, and, if insufficient, that the ruling is right.

" It is contended by the appellees, that the facts alleged in the answer do not sufficiently show that Coffelt was under duress when the notes were made, and much less so as to Anderson ; that, even if the answer is good as to Coffelt, it is not good as to Anderson, and, being pleaded for both, can therefore be good for neither.   But the com- mon-law strictness as to what duress of *imprisonment,* or- duress *per minas,* would avoid a contract, is very much re-- laxed in modern times, especially in the American courts,. upon the principle that the very essence of a contract is. the agreement of the minds which enter into it.   A mind that is constrained by fear cannot be said to agree to what it is thus forced to do, though it may give the outward consent to the act.   It was laid down a half a century ago,. in *Richardson* v. *Duncan,* 3 N. H. 508, as well settled, ' that when there is an arrest for improper purposes, without a

just cause; or where there is an arrest for a just cause; but without lawful authority; or where there is an arrest for a just cause, and under lawful authority, for unlawful purposes, it may be construed a duress.' In *Whitefield* v. *Longfellow*, 13 Me. 146, it was held, that ' If a man execute a bond for fear of unlawful imprisonment, he may avoid it on the ground of duress.' To the same effect are the following cases : *Severance* v. *Kimball*, 8 N. H. 386 ; *Foshay* v. *Ferguson*, 5 Hill, 154 ; and *Richards* v. *Vanderpoel*, 1 Daly, 71.

" In *Thompson* v. *Lockwood*, 15 Johns. 256, it was held, that a bond obtained by duress is not only void as to the principal, but also as to the surety. And the same in the following cases : *The State* v. *Brantley*, 27 Ala. 44 ; *Strong* v. *Grannis*, 26 Barb. 122 ; and *Osborn* v. *Robbins*, 36 N. Y. 365. And we think the same principle was fully recognized by this court in *Brooks* v. *Berryhill*, 20 Ind. 97, and may be held as fully settled in *The Lafayette, etc., R. R. Co.* v. *Pattison*, 41 Ind. 312, and in *Bush* v. *Brown*, 49 Ind. 573.

" The class of cases cited by the appellants, where the principal may be discharged and the surety held liable, do not bear out their argument. They stand upon other grounds entirely ; as where an infant or married woman enters into a contract which is void or voidable as to them, yet may be binding on their sureties. In such cases the discharge is personal, founded upon the legal disability to make the contract.

" Nor does the late case of *Talley* v. *Robinson's Assignee*, 22 Grattan, 888, support the views of the appellants. Robinson had had been mobbed, whipped and driven from the country, which outrage induced him to sell his lands and property at a great sacrifice to Talley. The court, in delivering the opinion, says : ' And if any person concerned in, or connected with, that outrage, had thereafter, and by means thereof, made the contract with Robinson for the

Coffelt *et al. v.* Wise *et al.*

purchase of his land, the contract might have been considered as made by him under duress; and certainly a court of equity would not have afforded its aid to such person to compel the specific execution of the contract. But it is not pretended by Robinson that Talley was in any manner concerned in, or connected with, that outrage.' And the case was decided upon the ground that Talley had nothing to do with the duress complained of by Robinson.

" We are of the opinion that the answer is sufficient, and that the court erred in rendering judgment for the appellees."

A rehearing was granted upon a doubt having been suggested whether the notes sued upon might not be binding upon the surety, though void as to the principal upon the ground of duress. In the petition for a rehearing it was said : " The appellee respectfully petitions the court to grant a rehearing of the above entitled cause, for the reason that the court erred in holding that the defence of duress to the principal will discharge the surety."

Upon a reconsideration of the case we have come to the same conclusion as before, and we adopt the opinion heretofore prepared in the cause.

We add a few additional authorities and some reasons which influenced our judgments upon the point upon which the rehearing was granted.

The obligation of a surety is accessary to that of a principal; and, as a general rule, in order to be binding upon the surety, there must be a principal upon whom the obligation or contract is binding. De Colyar on Guaranties and Principal & Surety, by Morgan, p. 39.

This general rule has its exceptions, as in the case of sureties upon the contracts of infants or married women, who are personally incapable of making, generally, valid and binding contracts.

The case before us does not come within any of the exceptions to the rule.

We quote, as elucidating the question under consideration, the following paragraphs from a recent work. Brandt on Suretyship and Guaranty.

"Section 121. WHEN SURETY NOT LIABLE IF PRINCIPAL NOT BOUND—GENERAL PRINCIPLES.—The obligation of a surety or guarantor is usually accessory to that of the principal, and as a general rule, wherever there is no principal there can be no surety; and whatever discharges the principal releases the surety. This is not, however, universally true. With reference to this, it has been well said that 'A surety is not entitled to every exception which the principal debtor may urge. He has a right to oppose all which are inherent to the debt; not those which are personal to the debtor. Pothier distinguishes them into exceptions *in personam* and exceptions *in rem.* The latter, which go to the contract itself, such as fraud, violence, or whatever entirely avoids the obligation, may be pleaded by the surety; but the former, which are grounded on the insolvency or partial solvency of the debtor, or which result from a cession of his property, or are the consequence of his minority, can not be opposed to the creditor.' * * * * * *

"Sec. 128. WHEN SURETY BOUND FOR CONTRACT OF INFANT OR MARRIED WOMAN, WHICH IS NOT BINDING ON THEM.—Where a party becomes the surety of a married woman, an infant, or other person incapable of contracting, he is bound, although the principal is not. With reference to this, it has been said that: 'Fraud, illegality, or mistake, which may rescind the contract of the principal, induces the discharge of the sureties; but if the invalidity of the contract rests upon reasons personal to the principal, in the nature of a privilege or protection, the principal acquires a

personal defence against the contract,' but the contract subsists, and the sureties may be charged thereon. The disability of the principal may be the very reason why the surety was required."

See, also, *Schee* v. *McQuilken*, 59 Ind. 269.

There are reasons, which, to our minds, are conclusive, why a surety should not be held bound upon a contract to which his principal has a valid defence, not of a personal character, but going to the contract itself, as fraud, duress, want or failure of consideration, etc. If the surety is bound by such contract, one of two things must follow. The surety, having been compelled to pay the money due by the contract, must either have his action against his principal to recover the amount paid, or he must lose it. If the first alternative is to be adopted, and the surety may maintain an action against his principal to recover the money paid, then the principal will be compelled virtually to pay upon a contract to which he had a complete defence.

It is but mockery to say that a man has a valid defence to a claim, and yet say that he must pay the amount due thereon to his surety, whom the law compels to pay to the creditor.

On the other hand, if the surety, having been compelled to pay the money to the creditor, can not recover it from his principal, he must lose it, and equal injustice is done.

These reasons apply with less force, if at all, to cases of suretyship for persons under disabilities, as infants, married women, etc. In such cases the surety may be supposed to have been apprised of the disability of his principal to make a binding contract, and to have entered upon the suretyship with reference to that fact. And if, having paid the money, he can not recover it from his principal, on the ground of such disability, he has no cause in a legal sense to complain.

The judgment below is reversed, with costs, and the cause remanded, with instructions to the court below to overrule the motion for judgment in favor of the appellees, and to render judgment for the appellants on the verdict.