FILED

Sep 28 2018, 10:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Thomas C. Allen
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Bruce T. Eaton,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 28, 2018

Court of Appeals Case No.
18A-CR-1248

Appeal from the Allen Superior
Court

The Honorable Frances C. Gull,
Judge

Trial Court Cause No.
02D05-1801-F4-4

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Bruce Eaton (Eaton), appeals his conviction for unlawful possession of a firearm by a serious violent felon, a Level 4 felony, Ind. Code § 35-47-4-5(c); and resisting law enforcement, a Class A misdemeanor, Ind. Code § 35-44-1-3(1)(a)(1).

We affirm.

## ISSUE

Eaton raises one issue for our review, which we restate as whether the trial court abused its discretion when it admitted evidence obtained in violation of his federal and state constitutional rights.

## FACTS AND PROCEDURAL HISTORY

On January 19, 2018, Detective Marc DeShaies (Detective DeShaies) of the Fort Wayne Police Department was performing surveillance on a home suspected to be the site of gang-related activity. The purpose of the surveillance was to generate probable cause so that law enforcement could procure and serve a search warrant there. Detective DeShaies observed a group of people exit the home and drive away in a black vehicle. While following the vehicle, Detective DeShaies noted that two of the vehicle's turn signals were malfunctioning and that its windows were heavily tinted such that it was not possible to discern the occupants. In addition, Detective DeShaies observed the driver of the vehicle driving above the posted speed limit.

Detective DeShaies activated his vehicle's emergency lights and chirped his siren, and the driver of the black vehicle pulled over to the curb. Immediately after the black vehicle came to a stop and before Detective DeShaies had radioed in the traffic stop, Eaton opened the rear passenger door and started to exit. Given the immediacy of Eaton's attempt to exit the car, Detective DeShaies believed that he was about to be attacked or that Eaton would flee. Detective DeShaies, who was wearing a full police uniform, exited his car and quickly closed the distance between himself and Eaton, loudly shouting for Eaton to get "back in the car." (State's Exhibit 1 at 0:47). When Detective DeShaies was at the car door, Eaton looked at him and attempted to place his legs outside the vehicle. Detective DeShaies observed Eaton place his hand at his waistband, which Detective DeShaies knew from experience was where a gun could be carried. Detective DeShaies could see that there were seven passengers in the car, some of whom were known to him to be gang members who had been involved in recent shootings. Detective DeShaies feared that he would be attacked.

Detective DeShaies gave multiple commands to the occupants of the vehicle to stop moving and place their hand on their heads, but not all of them complied. Detective DeShaies observed another passenger in the back seat reaching between his legs to the floor of the vehicle, which Detective DeShaies knew from his experience could be an attempt to hide contraband or a weapon. Eaton continued to touch his waistband with one hand while using the other hand to attempt to pull himself from the vehicle. Detective DeShaies, who still

had not had an opportunity to call for assistance, grew even more concerned that he was about to be attacked. Detective DeShaies placed his hand on Eaton's chest to keep Eaton inside the vehicle, but Eaton continued to struggle and push back. Detective DeShaies drew his gun and issued an ultimatum that he would be forced to shoot if his commands were not obeyed. Detective DeShaies then radioed for assistance using the most urgent call available, and other officers quickly arrived.

[7] Eaton was handcuffed and taken from the vehicle. When he stood to be led away from the vehicle, Eaton's loose-fitting athletic pants fell down. He was seated on a curb for a short time. When he stood prior to being transported, a fully loaded Smith and Wesson nine-millimeter handgun was discovered in his pants pocket. Eaton, who had a previous conviction for burglary, later admitted during an interview with police that he carried the weapon for protection. Eaton did not have a valid permit to carry a handgun.

[8] On January 25, 2018, the State filed an Information and charged Eaton with one Count of unlawful possession of a firearm by a serious violent felon and one Count of resisting law enforcement. Eaton filed a motion to suppress the evidence gathered from the traffic stop, arguing that Detective DeShaies lacked the necessary reasonable suspicion of criminal activity to detain him, as he was merely a passenger in a vehicle that was subject to traffic violations. Eaton reiterated this argument at the hearing held on his motion. On April 17, 2018, the trial court denied Eaton's motion to suppress, and Eaton waived his right to a jury trial. On April 18, 2018, the trial court found Eaton guilty on both

Counts. On May 8, 2018, the trial court sentenced Eaton to ten years for the firearm conviction and to one year for the resisting law enforcement conviction, to be served concurrently, for an aggregate sentence of ten years.

Eaton now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

Although Eaton presents the issue as an appeal from the trial court's denial of his motion to suppress, the issue is better framed as whether the trial court erred in admitting evidence obtained in violation of his rights under the Fourth Amendment to the United States Constitution and Article 1, Section 11, of the Indiana Constitution. We review a trial court's decision on the admission of evidence for an abuse of the trial court's discretion. *Fansler v. State*, 100 N.E.3d 250, 253 (Ind. 2018). We will reverse "only where the decision is clearly against the logic and effect of the facts and circumstances." *Id*. We do not reweigh the evidence and consider conflicting evidence in a light most favorable to the trial court's ruling. *Buckley v. State*, 886 N.E.2d 10, 13 (Ind. Ct. App. 2008). However, we also consider any uncontested evidence favorable to the defendant. *Id.* We will affirm the trial court's ruling if it is supported in the record by substantial evidence of probative value. *Id.* at 13-14. The ultimate determination of the constitutionality of a search or seizure is a question of law that we consider *de novo*. *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014).

## II. *Fourth Amendment*

[11] The Fourth Amendment protects "[t]he right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop constitutes a "seizure" for purposes of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). An officer may properly stop a vehicle when the driver of the vehicle is observed committing even a traffic infraction. *Reinhart v. State,* 930 N.E.2d 42, 45 (Ind. Ct. App. 2010). Once a vehicle is stopped for a traffic infraction, any passengers within the vehicle are also effectively "seized" for purposes of the Fourth Amendment. *Arizona v. Johnson*, 555 U.S. 323, 327 (2009).

[12] In *Tawdul v. State*, 720 N.E.2d 1211, 1216-17 (Ind. Ct. App. 1999), *trans. denied*, cited by the State on appeal but not by Eaton, this court held that, under the Fourth Amendment, an officer has the limited right to briefly detain a passenger who exits a vehicle after it has been lawfully stopped for a traffic violation. As part of that limited right, an officer may order a passenger who has exited a vehicle to return, but that authority lasts only long enough for the officer to make an initial assessment of the situation and alleviate any concerns the officer has for his or her safety. *Id*. at 1217. In addition, "[i]f probable cause or reasonable suspicion develop during this short period of time, then the officer may be justified in detaining the individual longer in order to further investigate." *Id*.

[13] The *Tawdul* Court observed that another panel of this court had reached a contrary conclusion in *Walls v. State*, 714 N.E.2d 1266 (Ind. Ct. App. 1999). *Id*.

at 1216. In declining to follow *Walls*, the *Tawdul* court noted the trend in other jurisdictions holding that the public interest in officer safety outweighs the potential intrusion on passengers' personal liberty interests during a traffic stop and that, thus, it is not unreasonable for an officer to order a passenger to return to the vehicle, even without independent reasonable suspicion of wrongdoing by the passenger. *Id.* at 1216-17.

[14] We apply *Tawdul* and find that Detective DeShaies' initial detainment of Eaton was reasonable under the Fourth Amendment. Detective DeShaies had observed the car in which Eaton was a passenger making at least three traffic code violations, precipitating a valid stop of the vehicle. *Reinhart*, 930 N.E.2d at 45. When Eaton opened the car door and attempted to exit, Detective DeShaies was constitutionally permitted to order Eaton back into the car for a brief period so that he could assess the situation and address any safety issues. *Tawdul*, 720 N.E.2d at 1217. Although *Tawdul* did not involve the forcible detainment of a passenger such as occurred here, we note that Detective DeShaies' act of using his hand to keep Eaton in the vehicle did not entail the excessive use of force and was a reasonable attempt to control Eaton while assessing the situation and addressing safety concerns. Eaton did not comply with Detective DeShaies' commands to stop moving and remain in the car. Eaton pushed back against Detective DeShaies' hand and struggled to get out of the car, which provided probable cause for his arrest for resisting law enforcement. *See* Ind. Code § 35-44.1-3-1(a)(1) ("A person who knowingly or intentionally . . . forcibly resists, obstructs, or interferes with a law enforcement

officer . . . while the officer is lawfully engaged in the execution of the officer's duties . . . commits resisting law enforcement."). The gun was then found in Eaton's pocket during a search incident to his arrest for resisting law enforcement. *See Neely v. State*, 164 N.E.2d 110, 110 (Ind. 1960) ("It is well settled that a search reasonably incident to a lawful arrest can properly be made although accomplished without a search warrant.").

[15] Eaton contends that his Fourth Amendment rights were violated because he was arrested and seized without probable cause when Detective DeShaies drew his weapon and held it upon him. However, Eaton's argument is unpersuasive given that, by pushing against Detective DeShaies and struggling to get out of the car while being lawfully detained during the execution of the traffic stop, Eaton had supplied Detective DeShaies with probable cause to arrest him for resisting law enforcement before Detective DeShaies drew his weapon. His arguments pertaining to why Detective DeShaies' actions exceeded the authority of an investigative stop are also unpersuasive given that we have determined that Eaton's initial detainment was valid and that the subsequent search of his person was done incident to a valid warrantless arrest for resisting law enforcement. The brief detainment and subsequent search incident to arrest yielding the gun did not run afoul of Eaton's Fourth Amendment rights.

## II. *Article 1, Section 11*

[16] Article 1, Section 11, of the Indiana State Constitution provides in relevant part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizure, shall not be violated."

Although this language largely tracks that of the Fourth Amendment, we interpret and apply it independently. *Mitchel v. State*, 745 N.E. 2d 775, 786 (Ind. 2001). The reasonableness of a search or seizure under the Indiana Constitution "turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). Those circumstances may include a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs. *Id*. at 361. In determining the reasonableness of law enforcement's actions under Section 11, we recognize that Indiana citizens are concerned with personal privacy interests but that they are also concerned with safety, security, and protection from crime. *Saffold v. State*, 938 N.E.2d 837, 840 (Ind. Ct. App. 2010), *trans. denied*. As such, we consider officer safety as a factor when assessing reasonableness. *Id*.

[17] The *Tawdul* court held that an officer's brief detainment of a passenger in a vehicle stopped for a traffic violation does not run afoul of the Indiana Constitution. *Tawdul*, 720 N.E.2d at 1214, 1216-17. Thus, Detective DeShaies was constitutionally permitted to order Eaton to get back in the car. Detective DeShaies' act of placing his hand on Eaton's chest to detain him there briefly to assess the situation, even before Detective DeShaies developed any concern, suspicion, or knowledge that Eaton had committed any criminal violation was reasonable: after approaching the vehicle, Detective DeShaies surmised he was

outnumbered seven-to-one, some of the passengers in the vehicle he knew to be armed gang members, he had not had the opportunity to call for back up, Eaton and at least one other passenger had made furtive movements indicating they may be armed, and the detective feared he was about to be attacked. In addition, the intrusion on Eaton was minimal given that he had already been stopped to effectuate the traffic stop and the degree of force used by Detective DeShaies was minimal.

[18] When Eaton continued to push back against Detective DeShaies and struggled to exit the vehicle, he supplied probable cause for his arrest for resisting law enforcement, which justified Eaton's continued detainment. *See* Ind. Code § 35-33-1-1(a)(4) (providing that a law enforcement officer may arrest a person when the officer has probable cause to believe the person is committing a misdemeanor in the officer's presence). After probable cause for Eaton's arrest developed, officers were then allowed to search Eaton incident to this valid arrest. *See Edwards v. State*, 759 N.E.2d 626, 629 (Ind. 2001) ("[O]nce a lawful arrest has been made, authorities may conduct a 'full search' of the arrestee for weapons or concealed evidence.") (citation omitted).

[19] Eaton argues that Detective DeShaies did not have the necessary degree of knowledge and concern of criminal activity on Eaton's part to justify an investigative stop, the intrusion on Eaton was "immense" given that he was stopped from leaving the vehicle at gunpoint, and that Detective DeShaies actions were not justified for safety reasons. (Appellant's Br. p. 17). In light of *Tawdul*, we note that the balance of these factors as regards the detention of a

passenger in a vehicle stopped for a traffic violation has already been struck in favor of constitutionality. *Tawdul*, 720 N.E.2d at 1214, 1216-17. These arguments are also unpersuasive given the fact that Detective DeShaies had probable cause to effect a warrantless arrest on Eaton for resisting law enforcement when he drew his weapon. Inasmuch as Eaton argues that Detective DeShaies was not justified in drawing his weapon on Eaton because his safety concerns did not bear any indicia of reliability, we find this to be an invitation to reweigh the evidence, which, given our standard of review, we decline. *Buckley*, 886 N.E.2d at 13. Eaton's state constitutional rights were not violated by any government action, and the trial court did not abuse its discretion in admitting the challenged evidence.

# CONCLUSION

[20] We conclude that the trial court did not abuse its discretion when it admitted evidence garnered from a traffic stop that did not violate Eaton's federal or state constitutional rights.

[21] Affirmed.

[22] Vaidik, C. J. and Kirsch, J. concur